In re DGI RESOLUTIONS,
INC., Debtor.

DGI Liquidating Trust, by and through
Walker, Truesdell, Roth & Associates,
in its capacity as Liquidating Trustee,
Plaintiff,

v.

William Gallagher Associates
Insurance Brokers, Inc.,
Defendant.

Bankruptcy No. 09–14063 (PJW).
Adversary No. 10–55355 (PJW).

United States Bankruptcy Court,
D. Delaware.

Feb. 17, 2011.

Christopher P. Simon, David G. Holmes, Cross & Simon, LLC, Wilmington, DE, Nancy D. Adams, Kevin J. Walsh, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, MA, for Defendant William Gallagher Associates Insurance Brokers, Inc.

Pauline K. Morgan, Ryan M. Bartley, Michael S. Neiburg, Justin H. Rucki, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, for Plaintiff DGI Liquidating Trust, by and through Walker, Truesdell, Roth & Associates, in its capacity as Liquidating Trustee.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to dismiss the Complaint. (Doc. # 4.)

The motion to dismiss is filed by William Gallagher Associates Insurance Brokers, Inc. ("WGA"), pursuant to Federal Rule of Civil Procedure 12(b)(6). The three-count Complaint, filed by DGI Liquidating Trust, by and through its liquidating trustee Walker, Truesdell, Roth & Associates ("Trustee"), seeks to recover a $75,000 broker services fee from WGA. For the reasons discussed below, I will grant the motion to dismiss as to Counts I and II, but will deny as to Count III.

### Background

DGI Resolution, Inc., f/k/a deCode genetics, Inc., ("Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, on November 16, 2009. Debtor immediately moved for authority to continue its current insurance and brokerage agreements and to "revise, extend, renew, supplement or change" insurance policies and agreements, as needed (the "Insurance Motion"). (Case No. 09–14063, Doc. # 7.)

The Insurance Motion states that "in the ordinary course of business, the Debtor maintains a number of insurance policies that provide coverage for, among other things, . . . directors' and officers' liability." (*Id.*, ¶ 16.) The Insurance Motion further states that "in the ordinary course of business, the Debtor engages William Gallagher Associates Insurance Brokers, Inc. ('WGA') and Carpenter Moore Insurance Services Ltd. ('Carpenter Moore,' and together with WGA, the 'Brokers') to act as its insurance brokers in placing its annual insurance program." (*Id.*, ¶ 26.) The Motion sought authority, *inter alia,* to

(b) continue insurance coverage entered prepetition and revise, extend, renew, supplement or change such coverage as needed,

* * *

and (d) maintain prepetition insurance brokerage agreements and revise, extend, renew, supplement or change such insurance brokerage agreements as needed, or enter into a new post petition brokerage agreement or agreements, as needed.

(*Id.*, ¶ 27.)

The Court granted that motion, first on an interim basis and then in a final order (the "Final Insurance Order"), entered on December 9, 2009. (Case No. 09–14063, Doc. # 84.)

On January 21, 2010, Debtor sold substantially all of its assets to Saga Investment, LLC ("Saga"). Following this asset sale, Debtor proceeded to liquidate its remaining assets under chapter 11.

During these wind down proceedings, Debtor decided to extend its directors' and officers' liability insurance policies (the "D & O Policies") by entering into a tail policy which would provide coverage for an extended claims reporting period. Debtor engaged WGA to procure that tail policy. On May 13, 2010, Debtor entered into a Broker Services Agreement with WGA (the "Agreement"), whereby WGA agreed to provide the following three services in exchange for a $75,000 brokerage fee (the "Broker Services Fee"):

WGA will develop, coordinate, recommend, negotiate, and secure Directors & Officers Liability (extended reporting period (aka "tail")) coverage with an appropriate and acceptable insurance carrier.

WGA will assist deCode in the gathering and preparation of all of the underwriting information that is necessary for the completion of the insurance specifications.

WGA will represent deCode's interest in claim settlement negotiations and follow up on open claims to assure proper handling.

(Doc. # 1, ex. A.)

The Agreement provided that WGA would provide these services "for a 72 month period from April 5, 2010 or until termination, whichever occurs first," and that "[e]ither party shall have the right to terminate this agreement upon 30 days prior written notice to the other." (*Id.*) Upon an early termination, WGA agreed to "return the pro-rata share of the fee effective from the date of termination to the original closing date of the agreement." (*Id.*)

WGA brokered a tail policy (the "Tail Policy") with XL Specialty Insurance Company ("XL"), whereby XL would provide $2 million in coverage for a reporting period of 6 years. The premium for the Tail Policy was $140,000.

At the May 14, 2010 confirmation hearing concerning Debtor's first amended plan of liquidation (the "Plan"), Debtor informed the Court that the official committee of unsecured creditors ("Committee") objected to the Tail Policy purchase. Debtor's counsel reported that this was the lone issue remaining between Debtor and Committee and that he would file the confirmation order under certification of counsel once the dispute had been resolved. On May 26, 2010, Debtor's counsel filed a certification stating that "[t]he Debtor is now submitting the Final Proposed Order, a copy of which is attached hereto as ***Exhibit A.*** There have been no further revisions to the Final Proposed Order." (Case No. 09–14063, Doc. # 322.) The certification did not refer to Committee's Tail Policy objection, but the only logical conclusion is that this issue had been resolved as between Debtor and Committee.

The Court confirmed Debtor's Plan, which provided for the transfer of all re-

maining assets to the DGI Liquidating Trust (the "Trust") as of the effective date of June 10, 2010.

Despite the apparent agreement between Debtor and Committee, on June 4, 2010, Committee sent a letter to Debtor's counsel advising (i) that it opposed the Tail Policy and (ii) that it believed Debtor lacked authority to purchase the Tail Policy. (Doc. # 9, ex. 1.) Debtor proceeded to purchase the Tail Policy by transferring $215,000 to WGA, which sum included $75,000 for WGA's Broker Services Fee and $140,000 for the Tail Policy premium payment to XL.

In August 2010, Trustee notified the relevant parties that he intended to recover the XL premium payment and the Broker Services Fee on behalf of the Trust. Trustee mailed WGA its written intent to terminate the Agreement and requested WGA to return the pro rata portion of the Broker Services Fee. (Doc. # 1, ex. B.)

Saga subsequently purchased the Tail Policy from the Trust for $60,000, with Trustee in return agreeing to forego the Trust's claim to recover the premium payment. Trustee, however, reserved the right to continue to seek recovery of the Broker Services Fee. Trustee wrote another letter to WGA demanding the return of the pro rata portion of the Broker Services Fee, which Trustee asserted was $69,589.04 as calculated on a cost-per-day basis. (Doc. # 1, ex. C.)

WGA refused to return any of the fee, and Trustee commenced this adversary proceeding. Trustee seeks to recover the Broker Services Fee under three causes of action. Counts I and II of the Complaint seek to avoid the entire Broker Services Fee as an unauthorized post-petition transfer under § 549. Count III, alternatively, seeks to recover the pro-rata share of the Broker Services Fee.

WGA has moved to dismiss the Complaint in this action on four grounds. First, it contends that relief under § 549 is unavailable because the Final Insurance Order authorized the Agreement and the transfer of the Broker Services Fee. Second, WGA argues that, as an agent or representative of Debtor, it is shielded from liability as a "Protected Party" under the exculpation provision in Debtor's Plan. Third, WGA argues that Trustee cannot terminate the Agreement without the express consent of its intended beneficiaries. And fourth, WGA argues that, even if Trustee can terminate the Agreement, Trustee has overstated the pro-rata fee refund amount, as WGA has substantially completed its obligations under the Agreement.

**Discussion**

**Standard of Review**

■ In considering this motion to dismiss, I must accept all factual allegations as true, construe the Complaint in the light most favorable to Trustee, and determine whether, under any reasonable reading of the Complaint, Trustee may be entitled to relief. *Rea v. Federated Investors*, 627 F.3d 937, 940 (3d Cir.2010).

**Avoiding Post–Petition Transaction**

■ Counts I and II of the Complaint seek to recover the Broker Services Fee from WGA under § 549. Section 549 provides, in relevant part, that

(a) [T]he trustee may avoid a transfer of property of the estate—

(1) that occurs after commencement of the case; and

(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

The Broker Services Fee satisfies § 549(a)(1) as a transfer that occurred after commencement of the case. The question presented here is whether it satisfies subsection (a)(2)(B) as an unauthorized transfer, and this question turns on the interpretation of the Final Insurance Order. If the Final Insurance Order authorized Debtor to enter the Agreement and to pay the Broker Services Fee, then Trustee may not recover the $75,000 under § 549. *See Vision Metals, Inc. v. SMS Demag, Inc. (In re Vision Metals, Inc., et al.)*, 325 B.R. 138, 143 (transfers made pursuant to court authorization are not voidable under § 549).

WGA contends that "the payment of the service fee to WGA was authorized by the Court as an ordinary course business transaction pursuant to the Insurance Motion and the [Final] Insurance Order." (Doc. # 5, p. 13.)

Trustee's counterargument focuses on the Final Insurance Order's "in the ordinary course" language. Trustee asserts that the Agreement was not made in the ordinary course "given the material and substantive differences between (i) the D & O Insurance that the Debtor maintained at the time the Insurance Motion was filed and the Final Insurance Order was entered and (ii) the Tail Policy. The D & O Insurance subject to the Final Insurance Order provided current coverage for current directors and officers while the purpose and scope of the Tail Policy is to provide insurance coverage to former directors and officers for a period of six years." (Doc. # 9, p. 13.)

I am persuaded that the Agreement and the payment of the Broker Services Fee were authorized by the Final Insurance Order. The Final Insurance Order authorized Debtor to "revise, extend, renew, supplement or change" its current insurance policies and broker agreements that are "in the ordinary course of business as set forth in the Motion." (Case No. 09–14063, Doc. # 85.) The Motion describes the Debtor's ordinary course of business as purchasing D & O policies and as including entering broker agreements with WGA to procure its policies. Here, the Tail Policy provided coverage for an extended claims reporting period for Debtor's D & O policies. The Tail Policy, thereby, revised, extended, supplemented and/or changed Debtor's D & O policies, bringing the Tail Policy within the scope of the Final Insurance Order. Because Debtor had authority to purchase the Tail Policy, it also had authority to enter the Agreement with WGA to procure the Tail Policy and to pay WGA for those services. Consequently, Trustee cannot recover the Broker Services Fee under § 549.

■ Furthermore, because the Final Insurance Order authorized Debtor to engage WGA as its insurance broker, WGA was a "Protected Party," as defined in the exculpation provision of the Plan. The Plan defines "Protected Party" as including Debtor's officers and directors and their "advisors, attorneys, representatives, professionals and other agents." (Case No. 09–14063, Doc. # 322, Ex. A, p. 13.) As a Protected Party, the Plan provides that WGA shall not "have or incur any liability for ... Causes of Action[1] ... that are based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place after the Petition

---

1. The Plan defines "Causes of Action" as "all claims as defined under section 101(5) of the Bankruptcy Code, causes of action, third-party claims, counterclaims and crossclaims (including, but not limited to, any and all alter ego or derivative claims and any Causes of Action described in the Disclosure Statement) of the Debtor and/or its estate that are pending on the Effective Date or may be instituted after the Effective Date against any person."

Date but on or prior to the Effective Date ... in connection with, arising from or relating to the Chapter 11 Case." (*Id.*, p. 50.)

The Agreement and the payment of the Broker Services Fee were an "agreement" and a "transaction" that occurred after the petition date but on or before the effective date, and they were made "in connection with, arising from or relating to the Chapter 11 Case." Therefore, as a Protected Party, WGA is shielded from Trustee's § 549 claim.

### Termination of the Agreement

Even though Trustee cannot seek to recover the Broker Services Fee under § 549, he may be able to recover the pro-rata portion of that fee under Count III of the Complaint as a breach of the Agreement.[2]

■ WGA advances two arguments in its motion to dismiss the breach of contract action in Count III of the Complaint. The first argument is that Trustee cannot terminate the Agreement without the consent of the Tail Policy's intended beneficiaries. WGA contends that "[u]nder general principles of third-party beneficiary law, the parties to a contract cannot modify or rescind the contract after the beneficiary's rights vest. This is because a rescission or modification after a change in position by a third-party beneficiary deprives that third-party of its expectations under the contract." (Doc. # 5, p. 17) (internal citations and quotation marks omitted.) Here, the Agreement specifically allows for early termination; therefore, the directors and officers could not have had an expectation that the Agreement would endure its full 72 months. Accordingly, this argument must fail because early termination could

not deprive the directors and officers of their expectations.

WGA's second argument is that Trustee has improperly calculated the pro rata share of the Broker Services Fee that must be returned. Trustee contends that the pro-rata share should be calculated on a cost-per-day basis. WGA argues that it should be calculated on a cost-per-services rate, as the Agreement included three different services to be provided by WGA. This question requires factual determinations and is, therefore, not suitable for disposition in a motion to dismiss. Accordingly, I will deny WGA's motion to dismiss as to Count III.

### Conclusion

For the foregoing reasons, I will grant WGA's motion to dismiss as to Counts I and II, but I will deny the motion as to Count III.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, the motion of Defendant William Gallagher Associates Insurance Brokers, Inc. to dismiss the Complaint (Doc. # 4) is **granted** as to Counts I and II and **denied** as to Count III.

---

**2.** WGA's status as a Protected Party does not shield it from the breach of contract action. Even if this cause of action were "in connection with, arising from or relating to the

Chapter 11 Case," it would not fall within the scope of the Plan's exculpation provisions because it occurred after the Plan's effective date.